IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | No. 2:09-cr-01223-DCN-1 |
| | ) | |
| FREDRICK LAMAR MCBRIDE, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before this court on defendant Fredrick McBride's ("McBride") motion for compassionate release. ECF No. 182. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

On August 12, 2009, agents of the Clarendon County Sheriff's Office conducted a narcotics investigation in the Summerton, South Carolina area on an unrelated case. ECF No. 138, Presentence Report ("PSR") ¶ 9. McBride's Cadillac was in the parking lot at the Nu Vibe Club when agents observed a Ford Explorer arrive to the lot. Id. ¶¶ 9–10. A Hispanic male approached McBride and engaged in a short conversation, then walked to McBride's vehicle where McBride opened the rear door. Id. The Hispanic male then got into the Ford Explorer and drove away. Id. The driver failed to turn on his headlights while it was raining, so the agents stopped him and conducted a search of his vehicle, finding $9,100 in cash in the Ford. Id. ¶ 11. The agents then returned to the Nu Vibe Club, where they looked through the Cadillac's window with a flashlight and saw rolls of cash and packages wrapped in foil in the backseat. Id. ¶ 12. A canine unit positively alerted the agents to the presence of illegal substances on the Cadillac, and a search warrant for McBride's vehicle was obtained. Id. Agents seized $1,500 in cash (the

1

equivalent of fifteen grams of cocaine at $100 per one gram), 373.85 net grams of cocaine, a loaded Highpoint 9mm handgun, and McBride's driver's license.  Id.  On August 13, 2009, local authorities arrested and charged McBride with possession of a weapon and trafficking cocaine.  Id.

A review of McBride's criminal history showed that he was a convicted felon whose right to own a firearm had not been restored.  Id. ¶ 14.  Specifically, McBride had been convicted for possession with intent to distribute crack cocaine, and possession with intent to distribute marijuana.  Id. ¶¶ 20–21.  Upon confirming McBride's status as a convicted felon, the Drug Enforcement Agency ("DEA") adopted this case for federal prosecution.  Id. ¶ 14.  On November 10, 2009, McBride was named as the sole defendant in a three-count indictment.  ECF No. 2.

The grand jury charged McBride with (1) intent to distribute a quantity of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C); (2) possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), 924(e); and (3) using and carrying a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 921(c)(1).  Id.  On April 15, 2010, a jury convicted McBride on all three counts.  ECF No. 62.  On November 8, 2010, the court sentenced McBride to 235 months of imprisonment.  ECF No. 83.  On November 9, 2010, McBride appealed.  ECF No. 83.  On April 23, 2012, the Fourth Circuit affirmed McBride's conviction with respect to Count Two but reversed and remanded his convictions with respect to Counts One and Three; McBride's sentence was thus vacated. ECF No. 122; United States v. McBride, 676 F.3d 385 (4th Cir. 2012).  On September

27, 2012, McBride entered into a plea agreement, ECF No. 132, which resulted in McBride being sentenced to a total of 188 months on January 16, 2013, ECF No. 139.

On April 12, 2021, McBride filed a pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 182. On May 13, 2012, the United States of America (the "government") responded in opposition, ECF No. 186, to which McBride replied on June 14, 2021, ECF No. 189. On July 29, 2021, McBride, through court appointed counsel, supplemented his motion by way of reply. ECF No. 191. As such, the motion has been fully briefed and is ripe for the court's review.

## II.  STANDARD

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) provides an exception to this general rule where "extraordinary and compelling reasons warrant such a reduction." Courts refer to requests under this section as motions for "compassionate release." United States v. Norris, 458 F. Supp. 3d 383, 385 (E.D.N.C. 2020). Prior to the First Step Act, Pub. L. No 115-391, 132 Stat. 5194 (2018), the law permitted only the Bureau of Prisons ("BOP") to file motions for compassionate release. United States v. Dowdell, 669 F. App'x 662 (4th Cir. 2016). Section 603 of the First Step Act amended § 3582(c)(1)(A)(i), authorizing defendants themselves to file requests for compassionate release with the sentencing court after exhausting all available administrative remedies. United States v. Griggs, 462 F. Supp. 3d 610, 615 (D.S.C. 2020).

The determination of whether "extraordinary and compelling circumstances" warrant relief is within the discretion of the district court. United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). The Fourth Circuit recently clarified that district

3

courts are empowered to "consider <u>any</u> extraordinary and compelling reason for release that defendant might raise." <u>United States v. McCoy</u>, 981 F.3d 271, 284 (4th Cir. 2020) (quoting <u>United States v. Brooker</u>, 976 F.3d 228, 230 (2d Cir. 2020)) (emphasis in original). If the court finds that such circumstances warrant a reduction in a defendant's sentence, it must "consider the factors set forth in [18 U.S.C.] § 3553(a)" to determine whether such a reduction is justified. 18 U.S.C. § 3582(c)(1)(A)(i). A defendant seeking compassionate release "has the burden of establishing that such relief is warranted." <u>Griggs</u>, 462 F. Supp. 3d at 615. Even after the changes to § 3582(c)(1)(A)(i) promulgated under the First Step Act, the burden remains "exceptionally high." <u>McCoy</u>, 981 F.3d at 288.

### III.  DISCUSSION

McBride provides two reasons for his compassionate release request: (1) his increased risk for illness should he contract COVID-19, and (2) a subsequent change in the sentencing guidelines that would have reduced his sentence had it been available at his time of conviction. The court first considers, as it must, whether McBride has exhausted all his administrative remedies or otherwise met the threshold requirement of § 3582(c)(1)(A). Finding that McBride has done so, the court then addresses the substance of McBride's motion. Finally, the court examines the § 3553(a) factors and whether they warrant a reduction in McBride's sentence, ultimately finding that they do not.

#### A.  Administrative Exhaustion

As a prerequisite to a motion for compassionate relief, a defendant must exhaust his available administrative remedies. Section 3582(c)(1)(A)(i) provides that a defendant

does so when: (1) the "defendant has fully exhausted his administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (2) the defendant requested compassionate relief from the warden of his facility and thirty days from the warden's receipt of the request has lapsed without response, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). McBride submitted a request for home confinement, pursuant to the CARES Act, to the warden of his BOP facility at the time, Federal Correctional Prison Marianna ("FCP Marianna Camp"),[1] and received a denial notice from the warden on April 12, 2021. ECF No.182-1 at 3. The government does not dispute that McBride has satisfied his administrative exhaustion requirement, and the court likewise finds that McBride has exhausted his administrative remedies.

### B. Extraordinary and Compelling Reasons

McBride argues that his increased risk of contracting and becoming severely ill from COVID-19 due to his obesity and hypertension prove an extraordinary and compelling reason. Though the court acknowledges obesity and hypertension are increased risk factors for COVID-19, the court does not find that McBride's medical conditions rise to the level of extraordinary and compelling. The BOP COVID-19 case tracker for FCI Butner,[2] where McBride is held, currently reports twelve COVID-19

---

[1] At the time of his pro se motion, McBride appeared to be held at FCP Marianna Camp, as that was where his letter to the warden was sent. At the time of the government's response in opposition, the government alleges, "His medical records and the BOP inmate locator indicate he was recently transferred to FCI Coleman Low, though he listed FPC Marianna Camp on his motion." ECF No. 186 at 4. However, in accordance with the BOP's "Inmate Locator" website, McBride is currently held in the Raleigh Reentry Management Facility ("RRM Raleigh"), which is a halfway house based in Raleigh, North Carolina. BOP, Find An Inmate, https://www.bop.gov/mobile/find_inmate/byname.jsp.

[2] RRM Raleigh is included in the facility of Federal Correctional Institution at Butner ("FCI Butner").

infections among its inmates and fourteen infections among its staff.  COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 17, 2023). The low number of active inmate cases at McBride's facility significantly reduces his risk of becoming infected with the COVID-19 virus.  The decreased risk of COVID-19 infection at FCI Butner, the court concludes, is due in part to the strong vaccination efforts of the BOP in general, as well as at FCI Butner in particular.  The BOP maintains a website detailing the number of doses of the COVID-19 vaccine it has received and administered.  See COVID-19 Vaccine Implementation, Federal Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Jan. 17, 2023) (showing that the BOP has administered 344,965 doses out of 384,153 received).  This website also notes the number of "Full Staff Inoculations Completed" as well as "Full Inmate Inoculations Completed" for each BOP facility.  Id.  According to this website, the BOP has inoculated 4,002 inmates and 979 staff members at FCI Butner.  Id.  Vaccine doses to inmates are "based on priority of need in accordance with CDC guidelines."  Id.

Certainly, "the [] pandemic may constitute an extraordinary and compelling reason [] in conjunction with specific risk factors such as age or medical condition." United States v. Cunningham, 2021 WL 2411134 (D.S.C. June 14, 2021).  But in light of the COVID-19 vaccine, "courts have recognized the difficulty in proving extraordinary and compelling reasons even when an inmate has a high-risk comorbidity."  See United States v. Eppard, 2022 WL 1785274 at *3 (W.D. Va. June 1, 2022).  "Moreover, a risk of infection, alone, is insufficient to show extraordinary and compelling reasons."  Id.; United States v. Divers, 2022 WL 1664070 at *3 (W.D. Va. May 25, 2022). "[F]ollowing full vaccination, it is now well understood, both the likelihood of

contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." Id. (citing United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) and collecting cases). For the vast majority of prisoners, the availability and effectiveness of vaccines make it "impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." United States v. Brown, 2022 WL 1664474 at *2 (D. Md. May 25, 2022) (quoting United States v. Collins, 2021 WL 4991588, at *3 (W.D. Va. Oct. 27, 2021)). "In the absence of evidence suggesting a particular risk of infection at the facility where a defendant is housed, the overall reduction in cases may indicate that the COVID-19 pandemic no longer constitutes an exceptional and compelling reason for compassionate release even in conjunction with underlying medical conditions." United States v. Raap, 2021 WL 2328048, at *2 (D.S.C. June 8, 2021); see also United States v. Wolfe, 2021 WL 2291894, at *2 (D.S.C. June 4, 2021); United States v. Moses, 2021 WL 2117159, at *2 (D.S.C. May 25, 2021). Further, "persuasive authority suggests that proving a particularized susceptibility to a severe case of COVID-19 in a post-vaccination world requires significantly more than it did in a pre-vaccination world." United States v. Moore, 2022 WL 453536, at *5 (S.D. W. Va. Feb. 14, 2022) (collecting cases).

McBride initially rejected the Pfizer vaccination, but on May 4, 2021, McBride was vaccinated, further reducing his chances of contracting COVID-19. ECF No. 186-1 at 49. Studies show that patients with the most common comorbidities (i.e., hypertension, diabetes, and chronic lung disease) showed similarly strong preventive results after the Pfizer COVID-19 vaccination as persons without comorbidities. Won

7

Suk Choi & Hee Jin Cheong, COVID-19 Vaccination for People with Comorbidities, 53(1) Infection & Chemotherapy 155, 155–58 (Mar. 22, 2021) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8032917/; see also United States v. Harris, 2021 WL 2964254, at *4 (W.D.N.C. July 14, 2021) (citing FDA Decision Memorandum, Pfizer-BioNTech COVID-19 Vaccine (Dec. 10, 2020), https://www.fda.gov/media/144245/download).

  McBride also alleges that FPC Marianna Camp is not accurately or sufficiently testing inmates or staff, creating an increased risk for contracting COVID-19. ECF No. 182 at 2. However, the government states in its response in opposition to McBride's pro se motion that, "His medical records and the BOP inmate locator indicate he was recently transferred to FCI Coleman Low, though he listed FPC Marianna Camp on his motion." ECF No. 186 at 4. The court confirms that since then, McBride has been transferred from FPC Marianna Camp to FCI Coleman Low to RRM Raleigh, which has shown its effective response to COVID-19 by proof of its minimal number of cases. Thus, the government does not find FPC Marianna Camp's response to COVID-19 is an extraordinary and compelling reason for McBride's release.

  Lastly, McBride argues that he is entitled to a sentence reduction due to a change in sentencing guidelines that would no longer qualify him as a "career offender." McBride points first to his prior offenses being "attempts" which should not meet the definition of a controlled substance offense, and then explains his previous probationary

sentences did not result in him serving more than one year in custody, which should not qualify them as predicate offenses. The court considers each argument in turn.

The sentencing guidelines provide that a defendant will be sentenced as a "career offender" if, among other requirements, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a)(3). Under the Sentencing Guideline at issue,

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). McBride explains that the Fourth Circuit recently held that attempted crimes are not part of the guidelines' definition of a "controlled substance offense." United States v. Campbell, 22 F.4th 438, 444 (4th Cir. 2022). Accordingly, he argues that his prior South Carolina drug convictions—possession with intent to distribute crack cocaine and a separate conviction for possession with intent to distribute marijuana—should not qualify as predicate offenses for career offender purposes because all were for "possession with intent to distribute," which by definition include the crime of attempt to distribute or transfer a controlled substance.[3] But, the court finds that Campbell did not determine that a South Carolina conviction for possession with intent to distribute cannot qualify as "controlled substance offense" to support a career offender

---

[3] Additionally, counsel argues for McBride that one of his two prior convictions is unclear and could be either a violation of (1) § 44-53-445, distribution of controlled substances within proximity of school, or (2) § 44-53-375, possession, manufacture and trafficking of methamphetamine and cocaine base and other controlled substances. However, for the reasons listed below, this offense (whether it be in violation of § 44-53-445 or § 44-53-3750) still qualifies as a "controlled substance," and would nevertheless result in McBride's career-offender status.

9

enhancement—rather, the court finds that a former possession with intent to distribute conviction may still support the court finding a defendant to be a career offender.

A review of the relevant Fourth Circuit authority supports the court's interpretation of the career offender enhancement for prior drug offenses in South Carolina. In Campbell, the court held that the West Virginia offense for delivery of crack cocaine, codified under § 60a-4-401(a) of the West Virginia Code, did not qualify as a predicate "controlled substance offense" as defined in U.S.S.G. § 4B1.2(b). The Fourth Circuit explained that the plain text of the Sentencing Guidelines excluded attempt offenses. Because the West Virginia delivery offense necessarily included attempt offenses, they could not be used as predicates under the categorical approach.[4] Notably, the Fourth Circuit in Campbell did not discuss the modified categorical approach, which allows courts to reference the charging document and sentencing sheet when determining whether an offense qualifies as a predicate offense, pursuant to Shepard v. United States, 544 U.S. 13, 26 (2005). "When a state statute is divisible . . . this court applies the modified categorical approach." United States v. Johnson, 812 F. App'x 126, 127 (4th Cir. 2020). For example, in United States v. Furlow, 928 F.3d 311, 319 (4th Cir. 2019), vacated on other grounds, 140 S. Ct. 2824 (2020), the Fourth Circuit held that South Carolina drug statutes are divisible and subject to examination under the modified categorical approach. Under that approach, the Fourth Circuit determined that a South Carolina conviction for possession with intent to distribute cocaine was a "controlled

---

[4] Under this approach, if the "least culpable" conduct criminalized by the predicate offense statute does not qualify as a "controlled substance offense," the prior conviction cannot support a career offender enhancement. United States v. King, 673 F.3d 274, 278 (4th Cir. 2012).

substance offense," pursuant to U.S.S.G. § 4B1.2(b).  Id.  Numerous courts have upheld Furlow and relied upon its analysis regarding the issue of divisibility of South Carolina drug statutes.  See, e.g., United States v. Johnson, 812 F. App'x. 126, 128 (4th Cir. 2020) (holding that South Carolina convictions for possession with intent to distribute crack cocaine and distribution of crack cocaine were predicate offenses pursuant to § 4B1.2(b)); United States v. Buckman, 810 F. App'x. 184, 187 (4th Cir. 2020) (same); United States v Williams, 997 F.3d 519, 524–25 (4th Cir. 2021) (same).  In the court's view, Campbell did not overrule Furlow and its progeny, all of which have specifically held that South Carolina's drug offenses are divisible and subject to the modified categorical approach and that South Carolina convictions for distribution or possession with intent to distribute are "controlled substance offense(s)" within the definition of U.S.S.G. § 4B1.2(b).  Accordingly, the court finds that McBride has not shown that he would not be considered a career offender if sentenced today.

      McBride also argues that his prior predicate offenses would no longer qualify under 21 U.S.C. § 802(57) as predicate offenses, since he did not serve more than one year on the prior convictions.  ECF No. 182 at 2.  Rather, McBride was sentenced to two years suspended to two years of probation for his possession with intent to distribute crack cocaine offense, and he was sentenced to five years suspended to three years of probation for his possession with intent to distribute marijuana offense.  PSR ¶¶ 20–21.  The defendant suggests that his prior convictions would no longer qualify as predicate offenses for his classification as a career offender because he only received probationary sentences.

      The First Step Act changed certain definitional portions of the statute, including 21 U.S.C. § 802(a)(1)(57), which altered the definition of a "serious drug felony."  That definition was changed by adding a requirement that a defendant would have had to have

11

served more than twelve months in prison for a prior conviction to qualify as a "serious drug offense" under the statute. However, here, like in other cases, defendant's sentence was enhanced not by any statutory definition, but by the career offender designation of the sentencing guidelines. See United States v. Phycharoenyos, 2022 WL 16922359, at *4 (D.S.C. Nov. 14, 2022). The definition of a "controlled substance offense" under the guidelines has not changed and has no requirement concerning the length of a defendant's prior sentence. United States v. Randall, 2022 WL 1462978, at *3 (D.S.C. May 6, 2022). Thus, McBride's arguments regarding his prior probationary sentences not meeting the criteria for a prior conviction are without merit because there has been no intervening change in the sentencing laws.

### C. Section 3553 Factors

Even if McBride had demonstrated that his circumstances were extraordinary and compelling, the factors set forth in 18 U.S.C. § 3553(a) weigh against his release. In sentencing a defendant or determining whether a reduction is justified, § 3553(a) requires a court "impose a sentence sufficient, but not greater than necessary" by considering the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the    law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for [the offense committed];
>     [. . .]
> (5) any pertinent policy statement
>     [. . .]
> (6) the need to avoid unwarranted sentence disparities among defendants with

        similar records who have been found guilty of similar conduct; and
        (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

    The court finds that the § 3553(a) factors weigh against reducing McBride's sentence to compassionate release or otherwise reducing his sentence. The nature and circumstances of the alleged offense were serious. McBride's instant conviction is for possession of a firearm by a felon, and his criminal history establishes his significant involvement in dealing drugs. The sentencing guidelines found McBride to be a career offender, and though his sentence was appealed and one count was set aside, the court reported "that the sentencing range properly reflects the seriousness of the offense, and it also fits nicely in the 3553(a) factors that we were concerned about, given the trial we had." ECF No. 147 at 11. Thus, McBride's sentence accurately reflects the seriousness of the crime. Though McBride has served the majority of his sentence, and his release date is set for May 24, 2023, the court finds that this does not tip the balance in his favor for a sentence reduction, particularly given that his original sentence was 235 months.

    The court acknowledges that McBride has made efforts at rehabilitation since being in prison; for example, by attending several rehabilitation programs including earning his GED, taking numerous classes, maintaining a position in "Food Services," and gaining work skills at his incarceration facility. ECF No. 191-8. Compare United States v. Patterson, 2022 WL 1624982 at *4 (D.S.C. May 23, 2022) (finding that a defendant's rehabilitation efforts through educational courses and programming dealing with health, personal finance, and employment was not enough under the § 3553(a) factors to favor a sentence reduction), and Brown, 2022 WL 1664474 at *3 (holding that completing various courses that will be valuable to the defendant upon release and securing steady employment are not "unusually deep" rehabilitation efforts and noting

13

that the defendant's sentence near the mandatory minimum was not based on a view that he needed significant rehabilitation or training), with United States v. Henriquez, 2021 WL 5771543 at *2 (M.D.N.C. Dec. 6, 2021) (finding that the defendant's "model behavior in prison, his unusually deep efforts at successful rehabilitation, his work ethic, and the support of a significant number of BOP employees with personal knowledge of his family circumstances" favored a sentence reduction).  Overall, the court finds that McBride's sentence as imposed properly reflects the seriousness of his offenses, promotes respect for the law, and provides adequate deterrence and just punishment.

Finally, McBride states that if he is not released, he asks that he be recommended "for placement in home confinement or a halfway house for the maximum period permissible pursuant to the [CARES Act]." ECF No. 191 at 15.  After review, the court finds it need not deliberate on whether to issue such a recommendation as the BOP has since transferred McBride, and he is currently serving his sentence in the halfway house at RRM Raleigh.

## IV.   CONCLUSION

For the foregoing reasons the court **DENIES** the motion for compassionate release.

**AND IT IS SO ORDERED.**

                                                                                    **DAVID C. NORTON**
                                                                                    **UNITED STATES DISTRICT JUDGE**

**January 17, 2023**

**Charleston, South Carolina**